

U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED

MAR 2 7 2013

TONY R. MOORE, CLERK
BY _____
         DEPUTY

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

---

MARK MOREHOUSE                    CIVIL ACTION NO. 3:06-00775

VERSUS                            JUDGE ELIZABETH ERNY FOOTE

EDWARD R. JACKSON et al           MAG. JUDGE STEPHEN C. RIEDLINGER

---

## MEMORANDUM RULING

Before the Court are the following outstanding motions: Defendants' Motion to Dismiss and Motion for Summary Judgment [Record Document 32] and Defendants' Supplemental Motion to Dismiss and Motion for Summary Judgment [Record Document 52]. Plaintiff opposes the motions [Record Documents 45, 53, and 69]. Defendants have also filed a reply [Record Document 62]. For the reasons that follow, the Defendants' motions are hereby **GRANTED**.

## BACKGROUND FACTS AND PROCEDURAL HISTORY

The facts are largely undisputed. Plaintiff, Mark Morehouse, was a Southern University ("Southern") campus police officer, hired on September 3, 2002.[1] This case arises out of Plaintiff's termination from his employment on December 19, 2003.[2] Plaintiff believes that he was entitled to permanent civil service status, and as such was denied the attendant procedural due process. According to Plaintiff, he had been recommended by his supervisors for permanent civil service status, after six months of

---

[1] Record Document 1, ¶ 7.

[2] Record Document 1, ¶ 9.

Page 1

excellent work performance.[3] Apparently, this recommendation reached Southern's human resources office, but due to a clerical error, the recommendation never reached the appointing authority for all civil service matters within the Southern system. Consequently, Plaintiff never technically achieved permanent status. Thereafter, upon failing to show up to work mandatory home football games and receiving the related written reprimands from his superiors, Plaintiff was formally terminated in a December 19, 2003 letter signed by Edward Jackson.[4]

Plaintiff appealed his termination to the Civil Service Commission of the State of Louisiana (hereafter, "the Commission") on January 17, 2004.[5] Plaintiff's appeal was consolidated with the appeals of two other dismissed officers and assigned to Civil Service Referee, Roxie Goynes.[6] A trial was held, wherein Referee Goynes conducted three days of public hearings on June 23, June 24, and July 15, 2004.[7] Upon completion of the testimony, the parties filed post-hearing briefs.[8] After submission of the briefs but

---

[3] Record Document 1, ¶ 7.

[4] Record Document 63, ¶3B.

[5] Record Document 1, ¶ 11; Record Document 52-3.

[6] Record Document 1, ¶¶ 11, 12; Record Document 32-2, ¶ 2.

[7] Record Document 1, ¶ 11; Record Document 32-2, ¶ 3. But cf Record Document 52-3, February 27, 2008 Decision by the Commission. In its "Statement of the Appeal," the Court notes that the Commission states that Referee Goynes conducted the public hearing on June 22-23, and July 15, 2004. These are also the dates referenced in both of the First Circuit's opinions. See Morehouse v. Southern University, Baton Rouge Campus, 2006-1184, p. 4 (La. App. 1 Cir. 5/4/07); 961 So.2d 473, 476; Morehouse v. Southern University, 2008-1943, p. 2 (La. App. 1 Cir. 3/27/09); 2009 WL 839030. However, in the affidavit of L. Joann McAndrew, Chief of Appeals of the Louisiana State Civil Service Commission, it appears the correct dates of the hearing are June 23-24, and July 15, 2004 [See Record Document 52-3, p. 52-53].

[8] Record Document 52-2, ¶ 2; Record Document 52-3.

prior to rendering a decision, it came to Referee Goynes' attention that there was a question as to whether Plaintiff had permanent status on the date of his dismissal.[9] Thereafter, Referee Goynes severed Plaintiff's appeal and rendered a final decision as to the other two officers, on December 16, 2005, upholding their terminations.[10]

On January 24, 2006, Referee Goynes held another public hearing limited to the issue of whether Plaintiff's employment status on the date of his dismissal was classified as permanent or probationary.[11] On February 1, 2006, a decision was rendered, holding that Plaintiff was a probationary employee at the time of his dismissal.[12] Plaintiff therefore had no property interest in his job, was subject to "at-will" termination, and had a limited right of appeal to the Commission.[13] In light of the legal limitations on Plaintiff's right of appeal, Referee Goynes allowed Plaintiff fifteen days to amend his appeal to allege discrimination or a specific violation of the civil service rules for probationary separation.[14] Plaintiff failed to so amend his appeal, applied for

---

[9] Record Document 52-3.

[10] Record Document 52-3. It is noted in the Commission's February 27, 2008 Decision in Plaintiff's case that the other two officers, Winfrey and Allen, appealed the Referee's decision to Louisiana's First Circuit Court of Appeal. The Commission considered the transcript from that appellate hearing when rendering its decision in Plaintiff's case.

[11] Record Document 52-3.

[12] Record Document 1, ¶ 15.

[13] Record Document 52-3.

[14] "Separation" is the term used by the Commission for termination of an employee.

Commission review of Referee Goynes' decision, and was denied said review in a March 22, 2006 decision affirming the referee's decision.[15]

Pursuant to Article X, § 12 of the Louisiana Constitution, Plaintiff then appealed directly to Louisiana's First Circuit Court of Appeal on April 13, 2006 alleging that the referee erred in: (1) reopening the case after it was fully tried on the merits in the summer of 2004 and both parties had rested their cases, and (2) in finding on the employment status issue that he was not a permanent employee at the time of his termination.[16] As to the first assignment of error, the First Circuit found that the referee "was well within her legal authority to call the special hearing on Mr. Morehouse's employment status."[17] The court further held that, in light of United States Supreme Court precedent, "Southern's 'words or conduct in light of the surrounding cirumstances' amounted to an implied or tacit understanding that Mr. Morehouse had achieved permanent status such that a property interest or right attached for procedural due process purposes."[18] The matter was remanded to the Commission for further proceedings, including a resolution on the merits of Plaintiff's case as heard by the Commission referee.[19]

---

[15] Record Document 52-3.

[16] See Record Document 52-3, pp. 25-37 (Morehouse v. Southern University, Baton Rouge Campus, 2006-1184, p. 5 (La. App. 1 Cir. 5/4/07); 961 So.2d 473, 476, writ denied, 2007-1147 (La. 9/21/07), 964 So.2d 333).

[17] 961 So.2d at 477.

[18] Id. at 480 (citing Perry v. Sindermann, 408 U.S. 593, 602 (1972) and Board of Regents of State Colleges v. Roth, 408 U.S. 564 (1972)).

[19] Id. at 480.

Southern University then filed an application for writ of certiorari, which was denied by the Louisiana Supreme Court on September 21, 2007. Thereafter, having been remanded by the First Circuit Court of Appeal on May 4, 2007, the Commission revisited the matter. On remand, Referee Goynes recused herself, and another referee, Paul St. Dizier, was appointed in her place.[20] Referee St. Dizier notified the parties of the substitution. He also advised that, after the submission of motions and briefs by the parties, he would decide the case based on the record, including the testimony and exhibits received during prior hearings. Neither party objected to the substitution of one referee for another.[21] The referee rendered his decision on February 27, 2008, finding that Plaintiff was terminated for cause and denying Plaintiff's appeal. On March 13, 2008, Plaintiff sought review of the referee's ruling, which the Commission denied, thereby adopting the referee's decision on June 6, 2008.[22]

Once again, Plaintiff appealed the Commission's decision to Louisiana's First Circuit Court of Appeal, asserting the following assignments of error: (1) the Commission erred in concluding that the appointing authority carried its burden of proof of legal cause for disciplinary action against him; (2) alternatively, the Commission erred in failing to find that his termination was not commensurate with his infraction, if

---

[20] Record Document 52-2, ¶¶ 12, 13. Plaintiff moved for Referee Goynes to recuse herself on November 11, 2007, as she is a named Defendant in the case sub judice.

[21] In fact, Plaintiff had originally moved for the recusal of Referee Goynes and thereafter requested summary disposition of the matter.

[22] Record Document 52-3, p. 12; Record Document 53-1; Record Document 45, pp. 15-28 (Exhibits 1 and 2).

any.[23] The court held that "there was a reasonable factual basis in the record for the finding of the Commission that Mr. Morehouse was 'insubordinate and demonstrated an utter disregard for the authority of his superiors.'"[24] And, as to Plaintiff's alternative assignment of error, the court found that legal cause existed to support Mr. Morehouse's termination from employment based on his refusal to obey direct orders.[25]

Plaintiff filed this federal lawsuit on October 6, 2006, with two amended complaints to follow on October 15, 2007 and February 17, 2012.[26] Named Defendants include Edward R. Jackon, the chancellor of Southern University; James A. Smith, Chairman of the Commission; Burl Cain, Vice Chairman of the Commission; Chatham H. Reed, David L. Duplantier, G. Lee Griffin, Rosa B. Jackson, and John McLure as members of the Commission; and Roxie F. Goynes, Civil Service Referee.[27] Plaintiff seeks declaratory and injunctive relief against the named Defendants for violations of 42 U.S.C. §1983; the Fourteenth Amendment to the United States Constitution; and Article I, §2 and Article X, §8 of the Louisiana Constitution of 1974.[28] Plaintiff also seeks to be promptly reinstated, with back pay, to the position from which he was terminated and seeks a judgment remanding this case to the Commission, upon determination that

---

[23] See Record Document 52-3, pp. 13-24 (Morehouse v. Southern University, 2008-1943 (La. App. 1 Cir. 3/27/09); 2009 WL 839030, writ denied, 2009-0948 (La. 6/10/09); 10 So.3d 737).

[24] 2009 WL 839030 at p. 5.

[25] Id.

[26] Record Documents 1, 21, and 60.

[27] Record Document 1, ¶ 1.

[28] Record Document 1, ¶¶ 2 and 4.

the Commission violated Plaintiff's due process rights through unreasonable delay.[29] Additionally, Plaintiff prays for attorney's fees and litigation expenses in accordance with 42 U.S.C. § 1988.[30]

## LEGAL STANDARDS

### Motion for Judgment on the Pleadings

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." "A motion for judgment on the pleadings under Rule 12(c) is subject to the same standard as a motion to dismiss under Rule 12(b)(6)." Ackerson v. Bean Dredging LLC, 589 F.3d 196, 209 (5th Cir. 2009)(citation omitted). "Thus, the 'inquiry focuses on the allegations in the pleadings' and not on whether the 'plaintiff actually has sufficient evidence to succeed on the merits.'" Id. (quoting Ferrer v. Chevron Corp., 484 F.3d 776, 782 (5th Cir. 2007). Moreover, Federal Rule of Civil Procedure 12(d) states that "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Here, the motion was filed as a "Motion to Dismiss/Motion for Summary Judgment," and both parties have attached matters outside the pleadings for the Court's consideration.[31] Both parties clearly had notice that

---

[29] Record Document 60, ¶¶ 2 and 3.

[30] Record Document 21, ¶ 3, V.

[31] Technically, there are two motions pending before the Court; however both motions are styled as dual motions to dismiss and for summary judgment. See Record Documents 32 and 52.

a motion for summary judgment was pending before the Court and had the opportunity to present all pertinent material. Thus, the Court will proceed in accordance with the summary judgment standards outlined below.

**Motion for Summary Judgment**

Federal Rule of Civil Procedure 56(a) directs that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[32] Summary judgment is appropriate when the pleadings, answers to interrogatories, admissions, depositions and affidavits on file indicate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When the burden at trial will rest on the non-moving party, the moving party need not produce evidence to negate the elements of the non-moving party's case; rather, it need only point out the absence of supporting evidence. See id. at 322-323.

Once the movant carries its initial burden, it is incumbent upon the non-moving party to demonstrate the existence of a genuine dispute as to a material fact. Matsushita Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574 (1986); Wallace v. Texas Tech. Univ., 80 F.3d 1042, 1047 (5th Cir. 1996)(citations omitted). Such a showing requires the non-moving party to come forward with "specific facts" showing

---

[32] Rule 56 was amended effective December 1, 2010. Per the comments, the 2010 amendment was intended "to improve the procedures for presenting and deciding summary judgment motions and to make the procedures more consistent with those already used in many courts. The standard for granting summary judgment remains unchanged." Therefore, the case law applicable to Rule 56 prior to its amendment remains authoritative, and this Court will rely on it accordingly.

Page 8

there is a genuine issue for trial. Id. at 587. This burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory or unsubstantiated allegations, or by a mere scintilla of evidence. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)(citations omitted). However, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (citations omitted); Reid v. State Farm Mut. Auto Ins. Co., 784 F.2d 577, 578 (5th Cir. 1986)(the court must "review the facts drawing all inferences most favorable to the party opposing the motion").

## LAW AND ANALYSIS

This case, in its current posture, boils down to whether or not Plaintiff's procedural due process rights have been violated by delays in the processing of Plaintiff's Civil Service appeal. Although Plaintiff has referenced his substantive *and* procedural due process rights, our responsibility is to examine Plaintiff's claim for what it actually is, not for what Plaintiff would have it be. The United States Supreme Court has made it clear that, in regards to an employee's property interest in his employment, federal courts act only to protect the employee's *procedural* due process rights. See Cleveland Bd. Of Educ. v. Loudermill, 470 U.S. 532, 538-41 (1985). Because employment rights are state-created rights rather than "fundamental" rights created by the Constitution, federal courts cannot appropriately provide substantive due process protection in these scenarios. See id.

Procedural due process rights, on the other hand, are fundamental constitutional rights. "While the legislature may elect not to confer a property interest in [public]

employment, it may not constitutionally authorize the deprivation of such an interest, once conferred, without appropriate procedural safeguards." Thus, "minimum [procedural] requirements [are] a matter of federal law, they are not diminished by the fact that the State may have specified its own procedures that it may deem adequate for determining the preconditions to adverse official action." Loudermill, 470 U.S. at 541 (quoting Vitek v. Jones, 445 U.S. 480, 491 (1980)(alterations in original quotation)).

### Procedural Due Process

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." Mathews v. Eldridge, 424 U.S. 319, 332 (1976). The Fifth Circuit has discussed procedural due process in the context of public employees' rights to employment as follows:

> Procedural due process entitles a public employee with a property right in his employment to notice of the charges against the employee, an explanation of the employer's evidence, and an opportunity to present his side of the story. The essential requirements of procedural due process under the Constitution are notice and an opportunity to respond. The fundamental requirement ... is the opportunity to be heard at a meaningful time and in a meaningful manner.

Holden v. Knight, 155 F. App'x 735, 738 (5th Cir. 2005) (internal citations omitted). An opportunity to be heard in a meaningful manner includes a prompt disposition of the issues, such that "[a]t some point, a delay in the post-termination hearing would become a constitutional violation." Loudermill, 470 U.S. at 547 (citing Barry v. Barchi, 443 U.S. 55, 66 (1979)).

Here, Plaintiff received a timely hearing but complains of an unreasonable delay in the disposition of the issues. Plaintiff argues that due process requires prompt post-termination proceedings, as well as a prompt disposition of any such proceeding. Plaintiff further argues that the delay in providing Plaintiff a prompt determination on the merits in this case was unreasonable, arbitrary, and has not been justified by the Defendants. However, here as in Loudermill, Plaintiff merely alleges that there was a lengthy delay by reciting the course of proceedings and his resulting legal opinion regarding the reason for said delay.[33] Although the delay in this case was certainly not ideal, there is no indication that it was unjustified.[34] Aside from the initial delay in Referee Goynes rendering a decision, the entire time lapse was due in large part to Plaintiff exhausting all available remedies, both on appeal and remand.[35]

---

[33] Plaintiff's proffered opinion regarding the delay in obtaining a prompt disposition "is that the Civil Service Referee and the Civil Service Commission declined to comply with the controlling precedent of Wallace v. Shreve Memorial Library, 97 F.3d 746 (5th Cir. 1996). Thus, there is no legitimate governmental interest that was furthered by this delay." See Record Document 21, ¶ 23; Record Document 53, p. 7.

[34] In his brief, Plaintiff repeatedly refers to the entire length of time that his case has been working its way through the Commission and court system as the relevant unreasonable delay. However, it seems clear to the Court that the only remotely colorful argument would refer to the initial delay in Referee Goynes' decision. Thus, the relevant delays are as follows. Plaintiff appealed his termination on January 17, 2004. The three-day hearing commenced six months later and concluded on July 15, 2004. Fifteen months later, on October 12, 2005, a status conference was held on the issue of Morehouse's employment status and a limited hearing was held on January 24, 2006. Thereafter, Referee Goynes rendered her decision on February 1, 2006, which became the final decision of the Commission on March 22, 2006. Without promoting such lengthy delays, this Court finds that the Commission did use that time to fully flesh out the facts of Mr. Morehouse's case, so as to render a thoughtful, legally correct decision. In fact, the First Circuit found that Referee Goynes "was well within her legal authority to call the special hearing on Mr. Morehouse's employment status." Morehouse, supra, 961 So.2d at 477.

[35] Plaintiff again cites to Eguia v. Tompkins, 756 F.2d 1130 (5th Cir. 1985), to argue that Defendants must demonstrate a legitimate reason for the "four plus year delay." For the same reasons stated in the Court's prior ruling at Record Document 49, adopted by the Court at Record Document 50, Plaintiff's reliance upon Eguia is misplaced. Furthermore, the description of Plaintiff's delay as "four plus years" is a distortion of the record and completely disregards the reality of events, namely the exhaustion of state remedies, that occurred over the course of said delay.

Page 11

There is no question that Morehouse's private property interest in retaining employment exists and is unquestionably and objectively valued. Likewise, the State has an interest in maintaining the efficient operation of the Southern University Police Department. As the Supreme Court recognized in <u>Barry</u>, "[o]nce [a termination] has been imposed, the [employee's] interest in a speedy resolution of the controversy becomes paramount... [i]t would seem as much in the State's interest as [the employee's] to have an early and reliable determination [of the issue]." 443 U.S. at 66. The Court acknowledges the importance of providing such employees with speedy resolutions; however, the course of the proceedings in this case cannot qualify as a constitutional violation of Plaintiff's rights.[36]

Because we do not find that Plaintiff's due process rights have been violated, a prerequisite to determining whether res judicata applies to this case, we now turn our attention to the application of res judicata to the remaining claims in Plaintiff's federal complaint.

**Louisiana Constitution**

Article X, § 12 of the Louisiana Constitution places exclusive original jurisdiction to adjudicate removal and disciplinary cases in the Commission, with the attendant power to appoint referees to hear and decide cases. <u>Louisiana Dept. of Agric. & Forestry</u>

---

[36] It is worth pointing out that <u>Barry v. Barchi</u> involved a Plaintiff in the harness racing industry, who had been suspended for drugging his horses. The <u>Barry</u> Plaintiff argued that his suspension was unconstitutional for lack of assurance of a prompt post-suspension hearing. The <u>Barry</u> case differs from the instant case, in that Plaintiff Morehouse had a relatively prompt hearing, with the attendant opportunity to be heard at a meaningful time and in a meaningful manner, with representation by counsel. The instant Plaintiff thus complains of a delay in disposition, rather than a delay in the opportunity to present his side of the story, as did the <u>Barry</u> plaintiff. Although both interests are important, the distinction is significant.

v. Sumrall, 98-1587 (La. 3/2/99); 728 So. 2d 1254, 1259. That section provides, in pertinent part:

> The State Civil Service Commission shall have the exclusive power and authority to hear and decide all removal and disciplinary cases... It may appoint a referee... to take testimony, hear, and decide removal and disciplinary cases. The decision of a referee is subject to review by the commission on any question of law or fact upon the filing of an application for review with the commission ... The final decision of the commission shall be subject to review on any question of law or fact upon appeal to the court of appeal wherein the commission is located...

"The general thrust of the exclusive jurisdiction grant is to preclude district courts from having concurrent jurisdiction with the Civil Service Commission over classified civil service employer-employee disputes that are essentially employment-related." Akins v. Hous. Auth. of New Orleans, 2003-1086 (La. App. 4 Cir. 9/10/03); 856 So. 2d 1220, 1222. The Commission is granted exclusive jurisdiction, because "the orderly fashion of resolving employer-employee related disputes would be disrupted if employees were allowed to forum shop between [the Commission] and the courts." Id.

### Res Judicata

Pursuant to 28 U.S.C. § 1738, the "judicial proceedings of any court of any such State ... shall have the same full faith and credit in every court within the United States and its Territories and Possession as they have by law or usage in the courts of such State..." "Section 1738 requires federal courts to give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged." Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 81 (1984) (quoting Kremer v. Chemical Construction Corp., 456 U.S. 461, 466 (1982)). The United States Supreme Court has established a two-part inquiry, under

which courts asked to apply res judicata to a state court administrative proceeding must "determine: (1) whether the law of the state in which the prior judgment is rendered would give that judgment preclusive effect against the claims asserted in the federal action; and (2) whether the party against whom preclusion is asserted had a full and fair opportunity in the state proceedings to litigate the claims." Hughes v. Arveson, 924 F.Supp. 735, 737 (M.D. La. 1996) (citing Kremer, 456 U.S. at 481-82).

In Louisiana, the relevant law regarding the preclusive effects of decisions rendered by the Commission is found in Louisiana Revised Statutes § 13:4231. Under this statute, "all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and the judgment bars a subsequent action on those causes of action." Plaintiff Morehouse's claims in the present action arose out of the same transaction or occurrence, namely his termination from Southern's police department, as those litigated at the state level. Thus, the first prong of Kremer's two-part inquiry is satisfied.

The second prong asks whether the minimum due process requirements were satisfied, such that Plaintiff had a full and fair opportunity to litigate his claims in the state proceedings. Here, it is clear from the record that Plaintiff Morehouse was able to present his case during three days of public hearings; submitted post-hearing briefs; successfully appealed the Commission's final decision; on remand, successfully sought the recusal of Referee Goynes and had his case assigned to a new referee for a determination on the merits; appealed the Commission's final decision again; and unsuccessfully sought a writ to the Louisiana Supreme Court. In light of the record

before us, it is clear that Plaintiff was afforded a full and fair opportunity to litigate his claims before both the Civil Service Commission and the Louisiana state courts.[37] Because this Court does not find the requisite failure of due process, and because state law would preclude Plaintiff's claims for reinstatement and back pay under the "same transaction or occurrence" theory, we find that res judicata applies to bar Plaintiff's claims.

### Rooker/Feldman Doctrine

Finally, out of an abundance of caution, the Court wishes to make clear that the merits of the final decisions issued in the state proceedings in this case are not being considered by this Court. The Fifth Circuit, in Liedtke v. State Bar of Texas, succinctly stated the firmly established doctrine of Rooker/Feldman[38] as such:

> "Absent specific law otherwise providing, that doctrine directs that federal district courts lack jurisdiction to entertain collateral attacks on state court judgments. Constitutional questions arising in state proceedings are to be resolved by the state courts. If a state trial court errs the judgment is not void, it is to be reviewed and corrected by the appropriate state appellate court. Thereafter, recourse at the federal level is limited solely to an application for a writ of certiorari to the United States Supreme Court. The casting of a complaint in the form of a civil rights action cannot circumvent this rule, as absent a specific delegation 'federal district court[s], as court[s] of original jurisdiction, lack[ ] appellate jurisdiction to review, modify, or nullify final order[s] of state court[s].'"

---

[37] Plaintiff attempts to cite Wooley v. State Farm Fire and Cas. Ins. Co., 2004-0882 (La. 1/19/05); 893 So.2d 746, for the proposition that "Civil Service decisions are not judgments within the meaning of La. R.S. 13:4231." However, Plaintiff fails to recognize that his case was litigated at the Commission level on the merits to the point of final decision, appealed to the First Circuit Court of Appeals, and then unsuccessfully appealed to the Louisiana Supreme Court. Plaintiff's case has absolutely reached final judgment for purposes of res judicata. Any argument to the contrary is meritless.

[38] See Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923) and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983).

18 F.3d 315, 317 (1994) (internal citations omitted). The Court does not interpret Plaintiff's claims as seeking a review of state proceedings; however, insofar as that request might have been contemplated, Rooker/Feldman disallows any such relief in this Court.

## CONCLUSION

For the foregoing reasons, the Defendants' Motions to Dismiss and Motions for Summary Judgment [Record Documents 32 and 52] are hereby **GRANTED**. Plaintiff's claims against all Defendants are hereby **DISMISSED WITH PREJUDICE**.

**THUS DONE AND SIGNED** in Shreveport, Louisiana this 26th day of March, 2013.

_____
Elizabeth Erny Foote
United States District Judge